802 P.2d 432

**Clarence WIEMAN and Caroline Wieman, husband and wife, Plaintiffs–Appellees,**

v.

**Brunn W. ROYSDEN, Jr., Nonparty–Appellant.**

**No. 1 CA–CV 89–443.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 27, 1990.

Gary M. Gallner, P.C. by Gary M. Gallner, Sun City, for plaintiffs-appellees.

Brunn W. Roysden, Jr., Tempe, in pro. per.

OPINION

JACOBSON, Judge.

In this appeal by a nonparty attorney, we determine (1) whether this court has jurisdiction of an appeal brought by an attorney who was sanctioned by the trial court in his capacity as counsel for the defendants below, and (2) whether the trial court erred in imposing such a sanction. Finding we have jurisdiction, we reverse.

FACTUAL BACKGROUND

In May 1987, Steve Arbuckle and appellee Clarence Wieman executed a promissory note whereby Wieman agreed to loan Arbuckle $20,000.00, with interest at three percent per month payable on the fifth day of each month, with thirty days notice to pay or demand payment in full. Upon default in the payment of any installment when due, the note provided that interest would accrue at a rate of ten percent per

annum until paid on the entire unpaid balance and accrued interest.

Arbuckle made no payment to Wieman after August 5, 1987, and, on January 5, 1988, Wieman declared Arbuckle in default and demanded payment of the entire amount due by February 5th. Arbuckle did not respond, and in February 1988, Wieman filed suit[1] against Arbuckle and his wife, Phyllis, alleging: (1) pursuant to the terms of the note, the principal amount of $20,000.00 was to bear interest at a rate of three percent per month, payable in payments of interest only on or before the fifth day of each month, and (2) Arbuckle had made no payments since August 5, 1987. Wieman prayed for judgment against the Arbuckles, "both separately and as a community, if applicable," in the amount of the note plus interest.

Through their attorney, appellant Brunn Roysden, Jr., the Arbuckles filed an answer in April 1988, admitting that Steve Arbuckle had executed the note, and that he had made no payments thereunder since August 5, 1987. However, the Arbuckles claimed as affirmative defenses (1) that the complaint failed to state a claim for which relief could be granted against Phyllis Arbuckle, and (2) that:

> the note was procured for reasons of common law [usurious interest] rates, and accordingly, under the doctrines of unclean hands, and/or in pari delicti [sic], [Wieman] should be precluded from recovering any sums except the principal amount actually paid to Defendant Steve Arbuckle, less all payments made by Steve Arbuckle.

1. The complaint was actually filed in the names of Clarence and Caroline Wieman, husband and wife, and both appear as appellees in this court. However, because Caroline Wieman did not play a relevant part in the litigation below, we refer only to Clarence Wieman as plaintiff-appellee.

2. A.R.S. § 44–1201(A) provides, in relevant part: Interest on any loan ... shall be at a rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to.

3. A.R.S. § 12–349(A) provides, in relevant part:

Wieman subsequently moved for summary judgment based on the admissions in the Arbuckles' answer. As to the affirmative defense of usury, Wieman argued that he and Arbuckle agreed to the three percent per month rate in writing, and that the defense of usury was therefore inapplicable pursuant to A.R.S. § 44–1201(A).[2] Wieman also requested expenses, attorneys' fees, and double damages under A.R.S. § 12–349,[3] alleging that the Arbuckles' answer was filed in bad faith, without substantial justification, and as a means of delaying the proceedings and harassing Wieman. The Arbuckles did not file a response.

Because Wieman's motion was not accompanied by a separate statement of facts, pursuant to Rule IV(f), Uniform Rules of Practice of the Superior Court, the trial court considered it as a motion for judgment on the pleadings pursuant to Rule 12(c), Arizona Rules of Civil Procedure, and granted the motion as to Steve Arbuckle. The court ordered that judgment be entered against Arbuckle in the principal amount of $20,000.00 plus interest at three percent per month from August 5, 1987 to the date of judgment. The court also found that Arbuckle's answer violated both A.R.S. § 12–349 and Rule 11(a), Arizona Rules of Civil Procedure, entitling Wieman to damages of $1,000.00 plus attorneys' fees against Arbuckle and attorney Roysden, jointly and severally. However, the trial court denied Wieman's motion as to Phyllis Arbuckle, finding that it could not presume a community liability because the complaint failed to allege that the Ar-

> [I]n any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party ... if the attorney or party does any of the following:
> 1. Brings or defends a claim without substantial justification.
> 2. Brings or defends a claim solely or primarily for delay or harassment.
> 3. Unreasonably expands or delays the proceeding.
> ....

buckles were husband and wife at all relevant times.

Arbuckle, through Roysden, moved for reconsideration, contending that the court improperly ordered interest on the note to accrue at a rate of three percent per month. Arbuckle contended that, under the terms of the note, interest would accrue on default at a rate of ten percent per annum, and that, at worst, the court should have awarded interest of three percent per month from August 5, 1987 to February 5, 1988, and ten percent per annum from February 5th, the date of default, to the date of judgment. Arbuckle also argued that the usury defense was not groundless because Phyllis Arbuckle did not agree in writing to an interest rate of three percent per month, *see* A.R.S. § 44–1201(A), and therefore Wieman's attempt to collect a usurious interest rate as to her "constituted unclean hands and in pari delicto sufficient to provide a defense as to both [of the Arbuckles]." The trial court denied Arbuckle's motion for reconsideration, ruling that he had no usury defense; however, the court ordered judgment against Arbuckle "in the amount of $20,000.00 plus *10% per annum* until paid." (Emphasis added.)

Arbuckle again moved for reconsideration solely on the issue of sanctions.[4] He argued that Wieman sought a judgment at three percent per month, notwithstanding the plain terms of the note which provided that he was only entitled to ten percent per annum after default. Moreover, Arbuckle argued, the court in fact ultimately rejected Wieman's prayer, awarding Wieman only ten percent per annum. Thus, although his interest rate challenge "was not presented in the most elegant way," Arbuckle's contention that Wieman was entitled to no interest was closer to the final award of ten percent per annum than Wieman's prayer for three percent per month, but it was Arbuckle who was sanctioned by the court. Finally, Arbuckle argued, even if his defense of usury was erroneous, it was an abuse of discretion for the court to impose sanctions merely because it was pled in his answer.

Judgment was ultimately entered against Arbuckle in the principal amount of $20,-000.00 plus interest at a rate of ten percent per annum from August 5, 1987 until the date of judgment. The court found that Arbuckle's answer violated Rule 11 and § 12–349 because default was acknowledged, and "the defense of 'usury' was not warranted by existing law or a good faith argument for extension, modification, or reversal of existing law." Accordingly, after granting judgment against Steve Arbuckle, severally, the court awarded Wieman damages against Arbuckle and Roysden, jointly and severally, in the amount of $1,000.00, and reasonable attorneys' fees in the amount of $1,519.25.

After conducting discovery, Wieman filed a motion for summary judgment against Phyllis Arbuckle, which the court granted. In their objection to the form of that judgment, the Arbuckles again argued that their usury defense, even if erroneous, did not rise to the sanctionable level. The Arbuckles argued that, in any event, the judgment should provide that the award against them and Roysden be characterized as "sanctions," not as "damages." The court agreed that the $1,000.00 was awarded as "sanctions," but overruled the balance of the objection:

> [T]he sanction was imposed because [the Arbuckles] without any legal or factual justification filed an answer which the court found to be for the purpose of delay and harassment, which also necessitated considerable court activity and time. It was not simply a matter of good-faith debate about applicable interest rates. Indeed, following the proper course—to allow a default—would have resulted in the same judgment absent the sanction.

A final judgment was then entered as to Phyllis Arbuckle, also providing that Wieman be awarded sanctions against Steve

---

**4.** Although this motion indicates that it was filed by Roysden on Arbuckle's behalf, the sole request in the conclusion was by Roysden requesting that the sanctions against *him* be struck.

and Phyllis Arbuckle and Roysden, jointly and severally, in the amount of $1,000.00, and reasonable attorneys' fees in the amount of $1,519.25. Roysden appealed from "the Judgment entered against [him]." The Arbuckles did not appeal.

## JURISDICTION

■ Although not raised by either party, we initially question whether we have jurisdiction to consider the merits of an appeal brought by a person who was not a party in the proceedings below. *See Musa v. Adrian*, 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981) (appellate court must determine that it has jurisdiction, even though the parties do not raise the issue).

Rule 1, Arizona Rules of Civil Appellate Procedure, provides that "[a]n appeal may be taken by any party aggrieved by the judgment." Generally, a person who is not a party to an action is not aggrieved and cannot appeal from findings adverse to him. *Great Southwest Fire Ins. Co. v. Triple "I" Ins. Servs., Inc.*, 151 Ariz. 280, 282, 727 P.2d 333, 335 (App.1986), *approved in part, vacated in part on other grounds*, 151 Ariz. 283, 727 P.2d 336 (1986) (persons dismissed as defendants were not parties aggrieved by the judgment).

Undoubtedly, although he was "aggrieved by the judgment" by the joint liability of the sanctions, Roysden was not a "party" to the action below. Nevertheless, we believe that, under these circumstances, Roysden should be permitted to appeal from that part of the judgment affecting him. Division Two of this court has held that a nonparty attorney against whom the trial court has imposed attorneys' fees[5] is entitled to appeal from that portion of the judgment adverse to him. *Abril v. Harris*, 157 Ariz. 78, 754 P.2d 1353 (App.1987). In such a case, the *Abril* court found, the

5. We note that, as distinguished from the present case, the appeal in *Abril* was brought both by the losing party and by his attorney. 157 Ariz. at 80, 754 P.2d at 1355.

6. We note that, although the judgment entered initially against Steve Arbuckle provided that Wieman was entitled to "damages" because Arbuckle's answer violated both Rule 11 and A.R.S. § 12–349, the final judgment that in-

attorney "has been aggrieved, his interest is direct, substantial and immediate, he would be benefitted by reversal of the judgment and his pecuniary interest has been directly affected." *Id.* at 81, 754 P.2d at 1356. We agree with this analysis, and hold that the issue of the award of sanctions against Roysden is properly before us. *Cf. Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 745 P.2d 617 (App. 1987) (issue on appeal was whether Rule 11 sanctions against attorney were properly imposed; no discussion whether court had jurisdiction over appeal by nonparty attorney). Accordingly, we have corrected the caption in this matter to reflect the true appellant.

## VIOLATION OF RULE 11[6]

Rule 11(a), Arizona Rules of Civil Procedure, provides in part:

... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and *is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses in-

cludes Phyllis Arbuckle and from which Roysden appeals indicates that the award was imposed as "sanctions," without reference to any particular basis for its imposition. On appeal, the arguments of both Roysden and Wieman are premised on the award as a Rule 11 sanction. Given that only attorney Roysden has appealed, we analyze the issue solely in terms of Rule 11.

curred because of the filing of the pleading, including a reasonable attorney's fee.

(Emphasis added.) We review *de novo* the trial court's legal conclusion that the facts constituted a violation of Rule 11. *Gilbert*, 155 Ariz. at 184, 745 P.2d at 632. In this light, we note that Roysden was sanctioned because the trial court concluded, in essence, that (1) the Arbuckles simply had no usury defense, and (2) even if they did, they should not have answered, but rather should have argued the matter at a default hearing. We address each theory in turn.

*Usury Defense*

Prior to 1980, Arizona's general usury statute regulated the interest rate that a lender could charge on a loan by defining a specific maximum percentage rate. Comment, *Monetary Control Law*, 1981 Ariz.St.L.J. 61, 122–31. However, in 1980, the legislature amended the general usury statute to remove the rate ceiling, allowing any interest rate to be charged as long as the parties agreed in writing to such a rate. Laws 1980, ch. 200, § 9, eff. Apr. 23, 1980; codified at A.R.S. § 44–1201(A). Thus, because Wieman and Arbuckle agreed in writing that interest would accrue on the note at a rate of three percent per month, we agree with Wieman that the Arbuckles would have no usury defense on this basis.

However, we do not believe that the Arbuckles' usury defense is as simplistic as Wieman would have us believe. Rather, we believe that, while undoubtedly "not presented in the most elegant way," the Arbuckles' essential contention was that, because the note provided that interest would accrue upon default at a rate of ten percent per annum, Wieman's attempt to

collect interest at a rate of three percent per month after default constituted usury.[7] We therefore analyze the Arbuckles' usury defense on this basis.

Initially, we note that the trial court accepted the Arbuckles' interpretation of the terms of the note—that is, that Wieman was entitled *only* to interest of ten percent per annum on default—and ultimately awarded Wieman judgment in the amount of the note plus ten percent interest per annum from the day of default, August 5, 1987. Wieman never argued that the Arbuckles' interpretation of the interest rate provisions of the note was not in fact correct.[8] Consequently, it is undisputed, for the purpose of this appeal, that Wieman prayed in his complaint for interest at three percent per month when he was contractually entitled to only ten percent per annum after default.

Nevertheless, Wieman argues that the Arbuckles do not have a usury defense because the legislature's 1980 amendment to § 44–1201 simply "did away with the common law defense of usury." We disagree.

Since 1909, the Arizona legislature has provided that the penalty for collection of a usurious amount of interest is forfeiture of all interest. *See* Laws 1909, ch. 84, § 2; Code 1939, § 36–102. Prior to 1980, these statutory forfeiture provisions defined a maximum percentage rate, which related to the rate ceiling then defined in the general usury statute. *See* Laws 1969, ch. 79, §§ 3, 4, as codified in former A.R.S. §§ 44–1201(B) and 44–1202. However, in 1980, when the legislature removed the interest rate ceiling in the general usury statute, allowing the parties to contract in writing for any interest rate, the legislature also

---

**7.** In the first motion for reconsideration filed on behalf of Steve Arbuckle, Roysden argued that, because Phyllis Arbuckle did not agree in writing to three percent per month, Wieman's attempt to claim this amount as against her constituted usury, thus providing a defense to both of the Arbuckles based on the common law theories of "in pari delicto" and "unclean hands." We need not address the merits of this defense, however, because the defense as pled in the Arbuckles' answer was not so specifically stated. Moreover, the Arbuckles, through Roys-

den, did not urge the usury defense on that basis at any time thereafter.

**8.** We believe that an equally valid interpretation of an ambiguous note would entitle Wieman to interest upon default of three percent per month on the principal amount of $20,000.00 *plus* ten percent per annum on the entire unpaid balance and accrued interest. However, neither of the parties has ever contended that this is the proper interpretation.

amended the forfeiture provision to provide for forfeiture of all interest if a person contracted for, reserved or received, directly or indirectly, an amount greater than the "maximum permitted by law." Laws 1980, ch. 200, § 10, eff. Apr. 23, 1980, codified in A.R.S. § 44–1202. Both A.R.S. §§ 44–1201(A) and 44–1202 have remained essentially unchanged since the 1980 amendments.[9]

In our opinion, it is certainly arguable that the interest rate which is "permitted by law" under § 44–1202 is that rate which the parties have "contracted for in writing" under § 44–1201(A)—in this case, ten percent per annum on default. Because this issue comes before us in the context of a Rule 11 sanction, we need not decide whether Wieman's attempt to collect more than the ten percent per annum contracted for after Arbuckle's default *in fact* was usurious under §§ 44–1201(A) and 44–1202. Rather, we find that the Arbuckles' defense of usury was, *at worst,* a "good faith argument for the extension [or] modification ... of existing law...." Nothing more is required under Rule 11.

We acknowledge that Roysden did not assert the usury defense in the Arbuckles' answer in precisely these terms, and instead alleged that "the note was procured for reasons of common law [usurious interest] rates," referring to the doctrines of "in pari delicti [sic]" and "unclean hands" to support the claim for forfeiture. Roysden also contends on appeal that § 44–1202 merely codified the common law relating to forfeiture of usurious amounts, when in fact the common law in this area has been codified since 1909. However, the answer did assert the defense of usury and did allege that Wieman was not entitled to recover any amount except the principal amount of the note. Roysden was not sanctioned for failure to properly plead a usury defense, but rather for pleading the defense at all. Construing the answer liberally to effect substantial justice, *see* Rule 8(g), we find that the trial court erred in

sanctioning Roysden for pleading the Arbuckles' defense of usury.

*Default Hearing*

■ Before entering the final judgment from which Roysden appeals, the trial court indicated that the "proper course" would have been for Roysden to have allowed the matter to go to default, apparently even if the Arbuckles had had a valid usury defense. Had Roysden done so, the court concluded, the result would have been "the same judgment absent the sanction." We disagree for several reasons.

First, usury is an affirmative defense. *See Dailey Mines Co. v. Catalina Consol. Copper Co.,* 59 Ariz. 149, 124 P.2d 320 (1942). Failure to specifically plead an affirmative defense results in waiver of the defense. *Hughes Aircraft Co. v. Industrial Comm'n,* 125 Ariz. 1, 2, 606 P.2d 819, 820 (App.1979). Therefore, Roysden would have waived any usury defense the Arbuckles may have had by letting the matter go to default.

Moreover, even assuming the Arbuckles had no usury defense, under the interpretation of the note as argued by the Arbuckles and accepted by the trial court, Wieman was entitled under the terms of the note to interest at a rate of ten percent per annum after their default. However, Wieman's complaint alleging that the principal amount was to accrue interest at a rate of three percent per month was "for a sum which [could] by computation be made certain" under Rule 55(b)(1), Arizona Rules of Civil Procedure. The trial court itself proved this to be the case when it entered a Rule 12(c) judgment on the pleadings against Steve Arbuckle in the amount of $20,000.00 plus three percent per month interest. Thus, contrary to Wieman's argument on appeal, the correct amount of interest claimed may not have been determined in a Rule 55(b)(2) hearing prior to the entry of default, leaving Roysden to attempt to set aside the default under Rules 55(c) and 60(c). We fail to see how Roysden could have violated Rule 11 by

---

**9.** A.R.S. § 44–1201(A) was amended by Laws 1989, ch. 144, § 2 to add a provision relating to

interest on a judgment in a condemnation proceeding.

*not* waiting until after default had been entered to argue that the amount of interest claimed was incorrect. Indeed, we believe a better case for Rule 11 sanctions would have been made had Roysden attempted to do just that.

Finally, as acknowledged by the trial court, Wieman's complaint did not properly plead the liability of Phyllis Arbuckle. In denying Wieman's Rule 12(c) motion for judgment on the pleadings as to her, the court stated that it would have been willing to presume a community liability, but the complaint did not allege that the Arbuckles were husband and wife at all relevant times. Had Roysden failed to answer, Phyllis Arbuckle's liability on the note would have been admitted despite Wieman's failure to properly plead it.

### CONCLUSION

We hold that the court erred in imposing Rule 11 sanctions against Roysden under the facts of this case. We reverse that portion of the judgment as against Roysden, and remand for proceedings consistent with this decision.[10]

EHRLICH and EUBANK, JJ., concur.

**10.** The final judgment entered in this case awarded "as sanctions against Defendants, C. Steve Arbuckle and Phyllis Arbuckle, and their attorney, Brunn W. Roysden, Jr., jointly and severally, the amount of $1,000.00 and their reasonable attorney's fees in the amount of $1,519.25." By reversing the award of sanctions against Roysden, we do not preclude the trial court from entering an award of attorneys' fees against the Arbuckles premised upon any other basis supported by the record.