NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RED MOUNTAIN MED SPA, L.L.C., *Plaintiff/Appellee,*

*v.*

AZ NP HEALTH SERVICES, LLC, et al., *Defendants.*

CHRISTOPHER B. INGLE, *Appellant.*

No. 1 CA-CV 16-0251
FILED 10-23-2018

Appeal from the Superior Court in Maricopa County
No.  CV2013-055010
The Honorable Susan M. Brnovich, Judge

**AFFIRMED**

COUNSEL

Sherman & Howard LLC, Phoenix
By Michael W. Wright, Gabriel A. Peraza
*Counsel for Plaintiff/Appellee*

May Potenza Baran & Gillespie PC, Phoenix
By Christopher B. Ingle, Michelle Mozdzen
*Counsel for Appellant Ingle*

---

**MEMORANDUM DECISION**

---

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Michael J. Brown and Judge James B. Morse Jr. joined.

---

**B E E N E**, Judge:

¶1          Appellant Christopher B. Ingle challenges a sanctions award stemming from the denial of a motion to disqualify opposing counsel from representing Appellee Red Mountain Med Spa, L.L.C. ("Red Mountain") at trial.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2          Red Mountain sued AZ NP Health Services and Steve and Loretta Hayko (collectively "Defendants") in 2013 and alleged, among other things, that Defendants had misappropriated Red Mountain confidential and proprietary information (the "Red Mountain Lawsuit"). AZ NP counterclaimed alleging tortious interference with its business relations and unfair business practices.  The superior court granted summary judgment for Red Mountain on AZ NP's counterclaims and set trial on Red Mountain's claims for January 4-7, 2016.

¶3          On December 14, 2015, less than a month before trial, Defendants, through Ingle, moved to disqualify Red Mountain's counsel, Sherman & Howard LLC ("S&H"), from continuing to represent Red Mountain.  Defendants alleged that Pamela Andow ("Andow"), a witness who they contended had "worked at AZ NP," had taken "a lot of AZ NP's proprietary information," and that S&H was "using the information . . . obtained from Andow against AZ NP in this case" in violation of Arizona Supreme Court Rule 42, Rules of Professional Conduct, Ethical Rules ("ER") 1.2 and 4.2.  Defendants also contended Andow had an "ongoing relationship" with AZ NP because it had disclosed her as a witness and intended to call her to testify at trial.  Defendants further noted that Andow had retained S&H to file suit to dissolve another company known as Improve Aesthetics after she "terminated her relationship with AZ NP" in August 2015 (the "Improve Aesthetics Lawsuit").

¶4          Red Mountain contended in response that Andow only worked with AZ NP as an independent contractor from September 2014

through May 2015, at which time she and Mr. Hayko formed Improve Aesthetics. S&H acknowledged representing Andow in the Improve Aesthetics Lawsuit but denied that it had any communications with Andow relating to the Red Mountain Lawsuit. S&H also contended that it obtained the allegedly confidential information through legitimate means. On these bases, Red Mountain argued Defendants filed the motion to disqualify "without substantial justification, with the intent to harass Red Mountain, and to needlessly increase the cost of litigation on the eve of trial" and requested sanctions under Arizona Rules of Civil Procedure ("Rule") 11 or Arizona Revised Statutes ("A.R.S.") section 12-349.

**¶5**      The superior court denied the motion to disqualify in an unsigned minute entry on December 23, 2015. The court found that Andow "was not a former employee" of AZ NP and that she did not start working with AZ NP until after the events that led to the Red Mountain Lawsuit. The court also granted Red Mountain's sanctions request, ordered Red Mountain to submit a fee affidavit and proposed form of order by January 9, 2016, and ordered that "any objection to the affidavit shall be filed no later than January 19, 2016."

**¶6**      Red Mountain submitted a fee application and proposed form of judgment on January 8, 2016. Five days later, Red Mountain filed an amended fee application and proposed form of judgment in which it specifically requested that the court enter sanctions against both Defendants and Ingle. Defendants responded on January 20, 2016, challenging the basis of the sanctions award and objecting to the amount of fees requested. On January 22, 2016, the superior court entered a final Rule 54(b) judgment denying the motion to disqualify and imposing $5,000 in sanctions against Defendants and Ingle jointly and severally (the "Sanctions Judgment.").

**¶7**      Defendants and Ingle filed a timely motion for new trial on February 8, 2016. Citing then-Rule 59(l), now codified as Rule 59(d), Defendants and Ingle asked the court "for an order vacating the judgment . . . ." They contended they were not given "an opportunity to respond to [the] Amended Application for Costs and Fees, or its Amended Proposed form of Judgment, before the Court entered said judgment" because Red Mountain had mailed the documents as opposed to using the electronic service tool available in the Maricopa County Superior Court TurboCourt system. They also contended the amended application and proposed form of judgment were untimely.

¶8        The superior court denied the motion for new trial in a March 31, 2016 unsigned minute entry, finding that Defendants were given an opportunity to, and did, address Red Mountain's sanctions arguments. Defendants, but not Ingle, filed a notice of appeal on April 4, 2018, challenging this ruling. Defendants and Ingle then moved the superior court to set an amount for a supersedeas bond on April 19, 2016.

¶9        On May 19, 2016, Defendants and Ingle filed an amended notice of appeal challenging the Sanctions Judgment. The next day—the day Ingle was scheduled to sit for a judgment debtor examination—Red Mountain notified the court that the Sanctions Judgment had been satisfied in full. The court then denied Defendants' motion to set an amount for a supersedeas bond as moot.

¶10        On November 15, 2017, following a lengthy stay due to ongoing bankruptcy proceedings, this Court determined that the April 4, 2016 notice of appeal and the May 19, 2016 amended notice of appeal were premature. This Court ordered Defendants and Ingle to apply for a signed order denying the motion for new trial and, once that order was obtained, file a new notice of appeal designating "the judgment and/or order being appealed as well as who is appealing." The superior court entered a signed order denying the motion for new trial on January 5, 2018. Ingle, but not Defendants, filed a timely notice of appeal challenging both the order and the Sanctions Judgment.

## DISCUSSION

### I.    This Court Has Jurisdiction over Claims For Which Appellate Notice Was Filed and Ingle Was Aggrieved.

¶11        Before addressing the merits, we must determine whether we have jurisdiction to resolve the issues Ingle raises on appeal. *Ghadimi v. Soraya*, 230 Ariz. 621, 622, ¶ 7 (App. 2012). A party may not appeal from a judgment or order unless he is "aggrieved" by the judgment or order. ARCAP 1(d); *Chambers v. United Farm Workers Org. Comm., AFL-CIO*, 25 Ariz. App. 104, 107 (App. 1975). One is "aggrieved" by a judgment or order if it denies him some personal or property right. *Gries v. Plaza del Rio Mgmt. Corp.*, 236 Ariz. 8, 12, ¶ 14 (App. 2014).

¶12        We have previously held that an attorney may appeal from a judgment imposing sanctions against him. *Wieman v. Roysden*, 166 Ariz. 281, 284 (App. 1990). The parties agree on appeal, however, that Ingle paid the remaining balance of the judgment in May 2016. Payment of a judgment can preclude an appeal if the payment is voluntary. *Flood Control Dist. of*

*Maricopa Cty. v. Paloma Inv. Ltd. P'ship*, 237 Ariz. 322, 326, ¶ 13 (App. 2015). Payments made to avoid collection efforts outside of a settlement or compromise agreement, however, are generally considered to be compulsory, not voluntary. *Webb v. Crane Co.*, 52 Ariz. 299, 320 (1938); *Freeman v. Wintroath Pumps-Div. of Worthington Corp.*, 13 Ariz. App. 182, 183 (App. 1970).

¶13        The timing of Ingle's payment—made on the day he was to sit for a debtor's examination—suggests he chose to satisfy the judgment to avoid further collection efforts. Satisfaction of the Sanctions Judgment thus did not preclude his right to appeal it. *See Del Rio Land, Inc. v. Haumont*, 110 Ariz. 7, 10 (App. 1973) ("One against whom a judgment is entered, if he fails to satisfy it, must expect to see his property seized and sold at a sacrifice, and it is difficult to conceive how his payment of the judgment can give rise to any estoppel against his seeking to avoid it for error.") (quoting Freeman on Judgments, vol. 2, 5th ed., p. 2410, § 1165).

¶14        Ingle also challenges unspecified rulings that he contends allowed Red Mountain to introduce "information and documents" at trial that he says were not properly disclosed. Ingle's notice of appeal did not challenge any part of the judgment resulting from the trial on Red Mountain's claims; moreover, he was not a party to the trial, nor was he aggrieved by the result. He therefore cannot raise those issues. *See, e.g., Matter of Gubser*, 126 Ariz. 303, 306 (1980) ("Appellant can appeal from only that part of the judgment by which she is aggrieved."); *MCA Fin. Group, Ltd. v. Enter. Bank & Tr.*, 236 Ariz. 490, 494, ¶ 8 (App. 2014) ("Generally, a person who is not a party to an action is not aggrieved and cannot appeal from findings adverse to him."). We thus proceed to consider the Sanctions Judgment and the order denying his motion to disqualify that precipitated it.

## II.     The Superior Court Did Not Abuse Its Discretion in Denying the Motion to Disqualify S&H.

¶15        Ingle contends the trial court erred in denying the motion to disqualify, reiterating his contentions that S&H violated ERs 1.2(d) and 4.2. We review the denial of a motion to disqualify counsel for an abuse of discretion. *Simms v. Rayes*, 234 Ariz. 47, 49, ¶ 8 (App. 2014).

¶16        ER 1.2(d) provides:

> A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any

proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

Ariz. R. Sup. Ct. 42, ER 1.2(d).  A lawyer violates the rule if he had actual knowledge that he was participating in criminal or fraudulent conduct.  *In re Tocco*, 194 Ariz. 453, 456-57, ¶ 11 (1999).

**¶17**        Ingle contends S&H violated this rule by accepting documents and information from Andow that he contends were confidential to AZ NP.  But he concedes he does not know "whether Andow acted on her own free will, or whether she was induced in some way" by S&H.  As such, even assuming Andow improperly obtained confidential information, Ingle fails to demonstrate any violation of the rule.  *See id*. at 457, ¶ 11 ("[A] mere showing that the attorney reasonably *should have known* her conduct was in violation of the rules, without more, is insufficient.").

**¶18**        As for ER 4.2, it provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Ariz. R. Sup. Ct. 42, ER 4.2.   ER 4.2 does not, however, prohibit communication with a party or an employee or agent of a party concerning matters outside the representation.   *Id*., cmt. 1. Moreover, *ex parte* communications with former employees are permitted "unless the acts or omissions of the former employee gave rise to the underlying litigation or the former employee has an ongoing relationship with the former employer in connection with the litigation." *Lang v. Superior Court*, 170 Ariz. 602, 607 (App. 1992).

**¶19**        Ingle contends ER 4.2 barred S&H from communicating with Andow regarding the Red Mountain Lawsuit because "she was formerly employed by [AZ NP] . . . and Andow has an ongoing relationship with AZ NP in connection with the litigation" because she was "disclosed as a witness . . . and the AZ NP Defendants had intended to call her to testify at trial."  He cites no authority for his novel contention that a party can create an "ongoing relationship" with a former independent contractor simply by disclosing him or her as a potential witness. *See id.* (stating that the fact that former employees "may have information which is damaging to [the former employer] . . . does not justify a ban on *ex parte* communications.").

Moreover, neither Defendants nor Ingle presented any evidence to suggest Andow's acts or omissions somehow gave rise to the Red Mountain Lawsuit. *Id.* at 609. The court thus did not abuse its discretion in denying Defendants' motion to disqualify S&H.

## III. The Superior Court Did Not Abuse its Discretion in Awarding Sanctions to Red Mountain.

**¶20** The superior court imposed sanctions on AZ NP and Ingle based on its finding that the motion to disqualify "was filed with the purpose of needlessly increasing the cost of litigation, to harass or to cause unnecessary delay." It did not specify whether it based its award on Rule 11 or A.R.S. § 12-349. *See Harris v. Reserve Life Ins. Co.*, 158 Ariz. 380, 383 (App. 1988) ("Rule 11, of course, deals with some of the same issues as A.R.S. § 12-349."). We first consider the award under Rule 11.

**¶21** Generally, an attorney violates Rule 11 by filing a document he or she knows or should know takes a position that is insubstantial, frivolous, groundless, or otherwise unjustified. *Compassionate Care Dispensary, Inc. v. Ariz. Dep't of Health Servs.*, 244 Ariz. 205, 216, ¶ 36 (App. 2018). We review a Rule 11 sanctions award for an abuse of discretion, accepting the superior court's fact findings unless they are clearly erroneous. *Id*.

**¶22** Ingle contends sanctions were not appropriate because he "conducted a reasonable investigation into both the facts and the law" before filing the motion to disqualify S&H. *See, e.g., James, Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Prot.*, 177 Ariz. 316, 319 (App. 1993) ("Rule 11 . . . requires that before signing a pleading, a lawyer possess a good faith belief, formed on the basis of a reasonable investigation, that a colorable claim or defense exists.") (citation omitted). Specifically, Ingle contends he supported the motion with "sworn declarations detailing Andow's relationship with AZ NP, Andow's knowledge of confidential and privileged information, and the documents she removed from the AZ NP office."

**¶23** The only declaration attached to the motion was one in which Mrs. Hayko speculated that it was "possible" Andow had conveyed "sensitive information" to S&H. She offered a second declaration with Defendants' reply in which she testified that she had "discussed the case with Andow" and that Andow, a nurse practitioner, had treated nine other disclosed witnesses. She did not, however, offer any evidence that Andow actually conveyed any purportedly confidential or proprietary information

to S&H. As such, even if we were to accept Mrs. Hayko's declaration, it does not approach the showing required to establish a violation of either ER 1.2(d) or ER 4.2.

¶24 Ingle also contends the superior court improperly focused on the fact that Andow was an independent contractor, not an employee. The court mentioned this in addressing Defendants' inaccurate contention that "Andow is not just a former employee, she is also a witness who will testify at trial." Defendants later conceded in their reply that Andow "was an independent contractor at AZ NP through May 2015[.]" Notably, Defendants also contended that Andow was "a disclosed witness who was employed by [AZ NP] *during the events at issue in this trial*" despite knowing she only worked with AZ NP in 2014 and 2015, well after the wrongful acts alleged in Red Mountain's complaint. In light of these misstatements, we cannot find that the superior court clearly erred in determining that there was not a reasonable investigation into the facts.

¶25 The court also found that "Defendants were aware of [S&H's] representation of Ms. Andow in early September, 2015, and waited until December 14, 2015, to file the Motion to Disqualify," which was "3 days after the Final Trial Management Conference and only 3 ½ weeks before the first day of trial." Ingle does not challenge this finding but rather states he was awaiting proof and it came in the form of the Haykos' 2014 tax return. The record, however, indicates the tax return was provided by his client, Steve Hayko, not Andow. Hayko transmitted the tax return in June 2015 to an unrelated third party, who then provided the tax return to S&H. We thus conclude the trial court did not abuse its discretion in awarding Rule 11 sanctions. We need not decide whether the record also supports an award under § 12-349. *See Solimeno v. Yonan*, 224 Ariz. 74, 82, ¶ 33 (App. 2010) (Court of Appeals may affirm a sanctions award on any basis supported by the record.).

## IV. The Superior Court Did Not "Decline" to Rule on the Motion to Set the Amount of a Supersedeas Bond.

¶26 Ingle also contends the superior court "declined to rule on the motion to set the amount of a supersedeas bond until after the [Sanctions Judgment] had been satisfied." He cites no record evidence to support this contention or to show that the court somehow knew he would satisfy the judgment.

¶27 We also note that this motion had only been pending for approximately 30 days and that Defendants and Ingle had not yet filed a

reply when Red Mountain filed the notice of satisfaction. *See* Ariz. R. Sup. Ct. 91(e) ("Every matter submitted for determination to a judge of the superior court for decision shall be determined and a ruling made not later than *sixty days* from submission thereof.") (emphasis added). In any event, the remedy on appeal would be to remand for a ruling, which the superior court has already issued. *W. Sav. & Loan Ass'n v. Diamond Lazy K Guest Ranch, Inc.*, 18 Ariz. App. 256, 261 (App. 1972).

## V. The Appeal Was Not Frivolous, Indisputably Meritless, or For the Purposes of Delay.

**¶28** Red Mountain requests its attorneys' fees pursuant to ARCAP 25, under which we may sanction an appellant who brings a frivolous appeal. *Johnson v. Brimlow*, 164 Ariz. 218, 221-22 (App. 1990). An appeal is frivolous if it is brought for an improper purpose or indisputably has no merit. *Ariz. Tax Research Ass'n v. Dep't of Revenue*, 163 Ariz. 255, 258 (1989). We consider ARCAP 25 sanctions with great caution. *Price v. Price*, 134 Ariz. 112, 114 (App. 1982).

**¶29** Red Mountain contends Ingle filed this appeal "to further delay this matter," but cites no record evidence to demonstrate this alleged intent. Indeed, the Sanctions Judgment had been satisfied when Ingle filed his latest notice of appeal, leaving unclear what he could have hoped to delay. In our discretion, we decline to award attorneys' fees under ARCAP 25.

## CONCLUSION

**¶30** For the foregoing reasons, we affirm the judgment. Red Mountain is the successful party on appeal and may recover its taxable costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA